# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| CATHERINE S. VARNEDOE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 213-029 |
| | * | |
| GLYNN COUNTY, GEORGIA, a | * | |
| political subdivision of the State of | * | |
| Georgia, | * | |
| | * | |
| | * | |
| Defendant. | * | |

## ORDER

Plaintiff Catherine S. Varnedoe filed a complaint on February 25, 2013 alleging sexual discrimination and retaliation in violation of Title VII. See Dkt. No. 1. Defendant Glynn County filed a Motion for Summary Judgment. Dkt. No. 29. For the reasons stated below, this motion is **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff contends she suffered from unlawful retaliation and discrimination resulting in her termination from the Glynn County Police Department ("GCPD"). Plaintiff worked at GCPD from March 6, 1989 until August 2011, when she was discharged. Varnedoe Dep. 5: 16-22. The facts relevant to Plaintiff's

1

contentions begin with an internal complaint filed by Officer Tiffany Lemery ("Lemery") against Sergeant Robert Sasser ("Sasser").[1]

**Internal Complaints Regarding Sasser**

Plaintiff received a call from Sergeant Dan Lodise ("Lodise") in January 2011 notifying her that a subordinate officer—Lemery—wanted to file a complaint about comments made by another officer—Sasser. Varnedoe Dep. 24:15 - 25:9. Lodise informed Varnedoe that during the investigation of a suicide on Leeswood Circle in Brunswick, Sasser began "talking down to [Lemery] and just belitting her." Id. at 25: 10-13. Varnedoe instructed Lodise to write a report, which was submitted in addition to Lemery's report, on January 5, 2011. Id. at 27: 19-24. Lemery's incident report states that Sasser inquired about whether Lemery had her college degree and that he told her, "having a degree doesn't mean sh--." Dkt. No. 43, Exh. A, pgs. 1-2. The report also alleges that Sasser made offensive remarks about the G.B.I., where Lemery had previously interned, specifically, Lemery complained that Sasser said "G.B.I. Agents do not know what they are doing, and they have no clue about police work." Id. at pg. 2. Lemery reported that Sasser later

---

[1] Although Sasser had attained the rank of Lieutenant at the time this complaint was filed, he was demoted to Sergeant shortly thereafter. The Court therefore will refer to him by his current rank of Sergeant.

AO 72A
(Rev. 8/82)

asked Lemery if she was a plant for the G.B.I. and whether she was wearing a wire. Lemery reported that Sasser stated that he was going to call G.B.I. agents to see if she went to the Agent School, and said that the G.B.I. taught her to lie. Id. Notably, the comments were limited to Lemery's education and work experience. According to Lemery:

> Lieutenant Sasser made these comments in front of other officers on two shifts. These comments made me feel as though this would hurt my professional reputation with these officers, especially coming from a Lieutenant.

Id. Captain Jim Kelly ("Kelly") conducted an investigation into the internal complaint. Kelly interviewed other officers present during the incident and determined that Sasser did not intend ill will, but that the comments "were made in a sense of light hearted jesting among the other officers for the purpose of reducing tension."[2] Dkt. No. 43, Exh. A, pg. 16. Kelly met with Lemery to notify her that he had counseled Sasser and to assure Lemery that no similar incidents would be tolerated. Id. Kelly reported that Lemery was satisfied with this outcome and that no future

---

[2] Kelly testified that he interviewed each of the six or seven officers present at the scene when the incident transpired. Kelly Dep. 25: 15-18. He stated that Sasser did not know how the new recruit—Lemery—would act to Sasser being sarcastic and belittling the G.B.I. Id. at 26: 16-18. Kelly further stated that Sasser was disciplined accordingly and a report was drawn up and submitted to Chief Doering. Id. at 26: 19-20.

AO 72A
(Rev. 8/82)

action was required.[3] Id. When Varnedoe returned from sick leave, she learned that Kelly had investigated Lemery's complaint and deemed it unfounded. Varnedoe Dep. 32: 8-10.

Within the next few weeks, Varnedoe heard that other officers saw Sasser change his computer screensaver to say "untouchable," which she speculated was because "[he] was bragging that he got away with . . . his behavior toward [Lemery]." Varnedoe Dep. 47: 1 - 48: 13. On January 19, 2011, Plaintiff sent an email to Lieutenant Mike Mistisshen, notifying him that Sasser had set his screen saver to say "untouchable." Dkt. No. 43, Exh. D-3. When Kelly asked Sasser about the screensaver, Sasser did not disclose the complete truth, which prompted Kelly to notify GCPD Assistant Chief Scott Trautz ("Asst Chief Trautz") and GCPD Chief Matthew Doering ("Chief Doering") of the situation. Kelly Dep. 28-29. Varnedoe was asked at deposition: "What was your understanding, if you had an understanding, of why Sasser had [written 'untouchable' on his screen saver]?" Varnedoe responded: "He was bragging

---

[3] Kelly testified:

> After I completed all my interviews and wrote up the reports and
> found what had happened I had counseled with Lieutenant []
> Sasser, and I also had brought in Lemery and discussed with her
> the findings and got her input on it, and she was happy.

Kelly Dep. 27: 7-11.

4

that he got away with the incident on Leeswood Circle, his behavior toward [Lemery]." Varnedoe Dep. 48: 11-13.

**Varnedoe's Opposition to the Sasser Investigation**

After her complaint was deemed unfounded, Lemery complained to Varnedoe and Lodise that other officers had discussed her complaint and were referring to her as a liar. Varnedoe Dep. 35: 14 – 36: 3. Varnedoe and Lodise spoke with Lemery and notified Lemery that they would support her whether or not she wanted to pursue the complaint further. Id. at 35: 5-10. According to Varnedoe, after further consultation with Lemery, Varnedoe—along with Lemery and Lodise—took the complaint to Asst Chief Trautz and notified him of their belief that the complaint was improperly investigated. Id. at 41: 9-19. Varnedoe, Lodise, Asst Chief Trautz, and Lemery then notified Chief Doering. Id. at 41: 23-24. Plaintiff testified that Chief Doering led them to believe he would look more thoroughly into the investigation. Id. at 43: 2-5. Plaintiff alleges that her meeting with Asst Chief Trautz and Chief Doering occurred in mid-January. Following this incident, Chief Doering reviewed the matter, and Sasser was demoted on February 6, 2011 from Lieutenant to Sergeant. Dkt. No. 43, Exh. F.

5

**Varnedoe's Reprimands**

Plaintiff received three reprimands beginning on March 29, 2011 for errors on reports and payroll problems.[4] Dkt. No. 31, Exh. 2. The reprimands were for a failure to timely review field training officer observation reports, a failure to ensure that subordinates completed timely reports, and for payroll errors. Id. According to Kelly, Plaintiff's work had "fallen off significantly" and he had to "constantly [] scrutinize and read her reports because there were always errors in her reports." Id. at 47: 5-18. Kelly testified that Plaintiff had substantially more errors in her work than the other lieutenants. Kelly Dep. 47: 5-6, 48: 3-7. There is no evidence indicating that the reprimands resulted in any pay decrease, change in duties or conditions of employment, or rank deductions.

**Internal Complaint Regarding Officer Cothren**

On April 21, 2011, Varnedoe, Lodise, and Lemery were at the police department when the dispatcher reported that police presence was requested in the Arco area of Brunswick. Varnedoe Dep. 80: 8-11. Varnedoe asked Officer Cothren ("Cothren") if he was "up close" to the area, to which he responded, "no, but I can be." Id. at 81: 5-11.

---

[4] Varnedoe also received a "counseling" for failing to perform certain Watch Commander duties on February 28, 2011. Dkt. No. 31, Exh. 2.

Varnedoe instructed both him and Lemery to respond to the call. Id. at 81: 20-22. A couple of days later, according to Varnedoe, Lemery notified Varnedoe and Lodise that Cothren had lied about his location when he responded to his call. Id. at 85: 17 - 86: 5. According to Varnedoe, this was the second lie by Cothren. Varnedoe testified that Cothren had previously told her that he was meeting another officer to exchange gloves when he was actually meeting to complain about Varnedoe with another officer. Id. at 87: 22-25, 88: 4; Dkt. No. 43, Exh. I-3.

Varnedoe and Lodise filed a joint complaint with Kelly against Cothren in which they alleged that he lied about his whereabouts when he responded to a call. Dkt. No. 29, Exh. 3. According to this complaint, Lemery told Plaintiff and Lodise that she "felt compelled" to report the integrity problem. When confronted, Lemery denied making such statements. Kelly explained that when Lemery read what Plaintiff reported to be Lemery's statements, Lemery cried and stated that she did not make them. Kelly Dep. 35: 19-23. Kelly felt conflicted because Lemery's denial of the statements indicated that either Lemery was lying or Plaintiff and Lodise were lying. Kelly took the issue to internal affairs. Lemery was given a truth

7

verification test that she passed. Id. at 36: 7-14.

Varnedoe now admits that she "fluffed" the report by adding

the "felt compelled" language, but Varnedoe maintains that

Lemery did, in fact, tell her some of the facts alleged in

the report. Varnedoe Dep. 111: 19-22. After the conclusion

of an internal affairs investigation, both Plaintiff and

Lodise were terminated. According to the termination

report:

> An internal police investigation was conducted
> regarding false statements by Lt Varnedoe and Sgt
> Lodise in their proposed adverse action against
> Ofc Cothren. The internal investigation revealed
> 1) four false written statements made by Lt
> Varnedoe and Sgt Lodise that were adverse to Ofc
> Cothren and Ofc Lemery[5], and 2) that Lt Varnedoe
> and Sgt Lodise failed to conduct a thorough and
> complete investigation as to whether or not Ofc
> Cothren lied about his location as they
> submitted.

Dkt. No. 31, Exh. 2. Varnedoe claims the real reason for

her termination was her filing complaints against Sasser.

Varnedoe Dep. 6: 9-18.

---

[5] The four statements include the following: 1) Although the report stated
that Varnedoe asked Cothren "what his present location was," the dispatch
recording indicated that Varnedoe actually asked, "are you in close." 2)
Doering determined that the report falsely stated that Lemery accused Cothren
of lying. 3) The report falsely stated that Lemery had accused Cothren of
traveling from "the Altama area" to Arco. 4) The report falsely claimed that
Lemery "felt compelled to report an integrity problem" when Varnedoe admitted
to fluffing this statement. See Dkt. No. 8, Exh. C, pgs. 2-4.

## LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could impact the outcome in a case. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). A dispute is genuine only where the jury could issue a verdict in the nonmoving party's favor. Id. In determining whether summary judgment is appropriate, the Court will view the evidence "in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The moving party bears the burden of showing a lack of genuine issue of material fact. Adickes, 389 U.S. at 157. The moving party should do so by identifying "particular parts of materials in the record" which indicate "the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A). It is only after the moving party has fulfilled this burden that the party opposing summary judgment bears a burden of responding. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmovant will defeat a motion for summary judgment by presenting evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

AO 72A
(Rev. 8/82)

**DISCUSSION**

## I.    Retaliation

Varnedoe claims unlawful retaliation, namely that she was fired for opposing Sasser's alleged harassment of Lemery. "Title VII protects employees against retaliation by an employer for participation in an employment discrimination case." Donnellon v. Fruehauf Corp., 794 F.2d 598, 600 (11th Cir. 1986). To establish a Title VII retaliation claim, Plaintiff must prove she: a) engaged in statutorily protected activity; b) suffered a materially adverse action; and c) there was a causal relation between the protected activity and adverse action. Butler v. Alabama Dept. of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008)(quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)). If the plaintiff establishes a prima facie case, the employer may present a legitimate, non-retaliatory reason for the action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001)(citing Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)). "As with a Title VII discrimination claim, the employer's burden is 'exceedingly light.'" Meeks v. Computer Assocs. Intern., 15 F.3d 1013, 1021 (11th Cir. 1994). After the employer meets this burden, the burden then shifts back to the plaintiff "to offer evidence that the alleged reason of the employer is a pretext

10

for illegal discrimination." <u>Crawford v. City of Fairburn, Ga.</u>, 482 F.3d 1305, 1308 (11th Cir. 2007).

In the present case, Plaintiff has failed to establish a prima facie case for retaliation. It is undisputed that Plaintiff suffered from a materially adverse action because she was terminated. However, Plaintiff has not established that she engaged in statutorily protected activity or that, even if she did, a causal connection existed between any activity and her termination. Furthermore, Plaintiff has presented no evidence of pretext.

**Plaintiff did not engage in protected activity**

To qualify as a statutorily-protected activity under Title VII, a plaintiff must show that she "opposed any practice made an unlawful employment practice by [Title VII], or [that] [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a); <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008). The plaintiff is not required to prove the underlying discrimination claim itself "so long as she had a reasonable good faith belief that the discrimination existed." <u>Meeks</u>, 15 F.3d at 1021. However, "[i]t [] is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also

11

indicate that the belief, though perhaps mistaken, was objectively reasonable." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). To satisfy this standard, "[a] plaintiff must not only show that [she] *subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful unemployment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." Id. "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." Clover v. Total System Servs, Inc., 176 F.3d 1346, 1351 (11th Cir. 1999).

In that regard, the Court must look for evidence that Varnedoe reasonably believed she was opposing unlawful Title VII practices, as opposed to opposing personal animosity or rudeness. That is because "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'" Oncale v. Sundowner Offshore Servs, Inc., 523 U.S. 75, 80 (1998). Accord McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986). ("Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex discrimination case by accusation").

12

AO 72A
(Rev. 8/82)

Plaintiff has failed to show that she opposed an employment practice prohibited by Title VII. It is undisputed that the incidences Plaintiff reported—Sasser's treatment of Lemery and writing "untouchable" on his screen saver—were unprofessional. However, Plaintiff has not met her burden of bringing forth any evidence that she objectively and reasonably believed his behavior violated Title VII. Looking at the incidences separately, there is no indication that either situation involved gender or sex or any of the categories protected by Title VII. Sasser's unprofessional remarks pertained exclusively to the G.B.I. and college. None of the internal complaints filed by or on behalf of Lemery even hint at gender or sexual harassment. As a result, there is no evidence that Plaintiff had an objective belief that by complaining about the Lemery incident or the investigation of it, she was complaining about unlawful sexual or gender based practices. The same is true of her complaint upon hearing that someone saw Sasser with the word "untouchable" as a screensaver after the Lemery incident was terminated. Varnedoe complained because she thought he wrote the word after being cleared in the Lemery incident. Again, there was nothing sexual or gender based alleged with regard to the Lemery incident.

13

In an attempt to add a sexual dimension to her January 2011 non-sexual opposition, Varnedoe details specifics of sexual harassment claims against Sasser that other people had made at other times. However, the evidence is undisputed that Plaintiff was not complaining about any such incidents at the time she voiced her opposition to the Lemery incident and the "untouchable" word. The record is simply devoid of evidence that indicates any belief—objective or subjective—that Varnedoe was complaining of unlawful Title VII practices.

**Plaintiff did not prove causation**

But-for causation is required in Title VII retaliation claims. <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 133 S.Ct. 2517, 2533 (2013). "The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." <u>Id.</u> at 2534. The causation burden can be met by showing "close temporal proximity between the statutorily protected activity and the adverse employment action." <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007)(noting that "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint fails

14

as a matter of law"). However, "mere temporal proximity, without more, must be 'very close.'" Id. ("A three to four month disparity between the statutorily protected activity and the adverse employment action is not enough.") "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." Id.

Even if Plaintiff could establish that she engaged in statutorily protected behavior, her prima facie case still fails from an inability to show that her complaints constituted the but-for cause of her termination. Plaintiff's termination occurred six months after she opposed the Sasser investigation, in August 2011. See Varnedoe Dep. 5: 16-22.[6] Indeed, the recommendation, in June of 2011, was four months after Varnedoe's complaints. Plaintiff seeks to narrow the time gap by arguing that she received four reprimands beginning six weeks after her complaints and that she had only received three counselings in the five years before her complaints. Dkt. No. 1, ¶¶ 22, 23. However, in the Eleventh Circuit, "[t]he reprimand of

---

[6] Plaintiff contends that because she had only received three disciplinary actions in the previous 5 years, her 2011 reprimands indicated retaliation for opposing GCPD's response to Lemery's complaint. Dkt. No. 1, ¶¶ 22-24. Plaintiff's disciplinary report shows that she received 12 counslings and 1 reprimand prior to the February 2011 counseling, between September 2003 and June 2010. Dkt. No. 31, Exh. 2.

AO 72A
(Rev. 8/82)

an employee does not constitute an adverse employment action
when the employee suffers no tangible harm as a result."
Summerlin v. M&H Valve Co., 167 Fed.Appx. 93, 97 (11th Cir.
2006). Plaintiff has not alleged that she suffered any tangible
harm as a result of the reprimands. Therefore, Plaintiff's
reprimands do not effectively narrow the time gap.

**Plaintiff did not present evidence of pretext**

As noted above, a plaintiff may rebut a defendant's
legitimate, non-retaliatory reason for the employment action
with "evidence that the alleged reason of the employer is a
pretext for illegal discrimination." Crawford, 482 F.3d at 1308.
Defendant presented evidence that Plaintiff was terminated based
on false statements in her report about Cothren. Those
determinations were made through a proper and commonly used
channel—an internal investigation. Plaintiff has presented no
evidence that the false statements were a pretext and that her
complaints regarding Sasser actually prompted Chief Doering to
terminate her employment. Plaintiff contends that circumstantial
evidence created an issue of fact regarding pretext. See Dkt.
No. 43, pg. 19. Plaintiff points to three incidents which she
alleges provide circumstantial evidence of pretext. Id. First,
Plaintiff points to Sasser lying about writing "untouchable" and
the incident being categorized merely as an act of withholding

16

facts. However, Sasser's conduct here was quite different from the conduct of Varnedoe and Lodise. While Sasser withheld the truth to avoid punishment, Varnedoe and Lodise affirmatively submitted false statements which implicated another officer. Next, Plaintiff points to Cothren lying about his whereabouts when he spoke to Varnedoe and Cothren's disciplinary action being reduced to a reprimand. Id. However, Chief Doering reduced the punishment to a reprimand after learning that when Cothren told Varnedoe he was meeting another officer to exchange gloves, he was actually meeting to discuss complaints about Varnedoe. This conduct, too, is remarkably different from fabricating a report about another officer. Third, Plaintiff contends that Chief Doering "took three pages to pick apart her one-page report [about Cothren] and find that there were four separate statements in that report that constituted lying." Id. at pgs. 19-20. Plaintiff contends that Sasser—even with a history of "unbecoming conduct"—was merely demoted rather than terminated. Id. at pg. 20. Again, the factual scenarios are exceedingly different and this point fails to serve as evidence of pretext. Plaintiff has not rebutted Defendant's proffer of legitimate, nondiscriminatory reasons with evidence of pretext. Consequently, summary judgment is appropriate on the retaliation claim.

17

AO 72A
(Rev. 8/82)

## II. Disparate Treatment

Varnedoe also alleges disparate treatment. That is, she contends she was treated more harshly than similarly situated male employees in violation of Title VII. Title VII prohibits employment discrimination on the basis of color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the plaintiff in a Title VII case bears the initial burden of establishing a prima facie case of gender discrimination. Demonstrating a prima facie case only requires the plaintiff to put forth facts that create an inference of discrimination. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

To establish a prima facie case of disparate treatment, the plaintiff must prove 1) she is a member of a protected class; 2) she was subjected to an adverse employment action; 3) she was treated less favorably than similarly situated, male employees; and 4) was qualified for the job. Miller-Goodwin v. City of Panama City Beach, Fla., 385 Fed.Appx. 966, 969 (11th Cir. 2010). A plaintiff is subjected to an adverse employment action when she suffers "a serious and material change in the terms, conditions, or privileges of employment." Rainey v. Holder, 412 Fed.Appx. 235, 238 (11th Cir. 2011)(quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1238-39 (11th Cir. 2001)). "To make a

18

comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that she and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d 1555 at 1562. Determining whether employees are similarly situated requires the Court to look at whether they "are involved in or accused of the same or similar conduct and are disciplined in different ways." Brown v. Jacobs Engineering, Inc., 401 Fed. Appx. 478, 480 (11th Cir. 2010) (quoting Maniccia v. Brown, 171 F.3d at 1368)). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield, 115 F.3d at 1562.

**Plaintiff Cannot Prove Prima Facie Case**

It is undisputed that Plaintiff, as a female, belongs to a protected class, that she was subjected to an adverse job action through termination, and that she was qualified for the job. The parties disagree about only one element: whether Plaintiff has brought forth proper evidence that she was treated differently than similarly situated males.

19

Here, we do not have to look hard for a male comparator. Lodise is a male. Lodise was implicated in and found to have engaged in the same dishonest behavior allegedly exhibited by Varnedoe. Both Lodise and Varnedoe suffered the same punishment—termination. Here, no one must wonder how a male would have been treated. The record shows that the male and female would both be treated the same. Plaintiff urges the Court to ignore the identically situated comparator, Lodise, and look further back and further away from the identical conduct. She alleges that over the course of the past seven years, three other male employees lied yet received lesser punishment than she and Lodise did. These instances include: 1) Sasser not telling the complete truth about writing "untouchable" on his screen saver in 2011; 2) Cothren not truthfully disclosing his location in the incident that Varnedoe reported in 2011; and 3) one officer noting on another officer's termination paperwork that he was ineligible for rehire when some question existed about whether or not the officer was actually eligible, in 2007. See Dkt. No. 44 ¶ 17; Dkt. No. 43, Exh. F. Not one of these examples involves an officer fabricating conduct of another officer and submitting a false report to document the fabricated conduct. Thus, these examples are far from "nearly identical."

AO 72A
(Rev. 8/82)

**CONCLUSION**

For the reasons stated above, Defendant GCPD's Motion for Summary Judgment is **GRANTED**. The Clerk of Court is directed to enter the appropriate judgment.

**SO ORDERED**, this 12TH day of August, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)